IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EDDIE WILSON,
:
:
    Petitioner
:
:  CIVIL NO. 4:06-CV-1853
:
v.
:  Hon. John E. Jones III
:
:
UNITED STATES PAROLE
:
COMMISSION, *et al.*,
:
:
    Respondents
:

## **MEMORANDUM**

February 11, 2010

## **THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Petitioner Eddie Wilson ("Petitioner" or "Wilson"), an inmate presently confined at the United States Penitentiary - Hazelton ("USP Hazelton") in Bruceton Mills, West Virginia, initiated this action by filing a *pro se* Petition for Writ of Habeas Corpus under the provisions of 28 U.S.C. § 2241. (Doc. 1.) Named as Respondents are the United States Parole Commission ("Parole Commission") and Jonathan Miner, the Warden of the Allenwood United States Penitentiary ("USP Allenwood") in White Deer, Pennsylvania.[1]

---

[1]The only properly named Respondent in a federal habeas corpus action is Petitioner's
(continued...)

*Pro bono* counsel subsequently entered an appearance on behalf of Wilson, and after obtaining leave of court, filed an Amended Petition. (Doc. 19.) The Amended Petition challenges the Parole Commission's July 7, 2004 and April 21, 2005 decisions to deny Wilson parole. (*Id.*) Specifically, Wilson argues that the Parole Commission's failure to set a presumptive release date constitutes a violation of the *Ex Post Facto* Clause and that the denials of parole were sufficiently capricious, arbitrary, and vindictive to deny him due process of law. (*Id.* at 9-17.) Respondents have filed a Response to the Petition (Doc. 7), a Supplemental Response[2] (Doc. 11), and a Supplemental Response to the Amended Petition (Doc. 15). Accordingly, the Amended Petition is ripe for review. For the reasons set forth below, the Amended Petition will be denied.

## I. FACTUAL BACKGROUND

On October 5, 1976, Wilson entered a guilty plea in the Superior Court for the District of Columbia to thirty-six (36) felony counts. (*See* Doc. 19 at 3.) On January 31, 1977, Wilson was sentenced on first degree murder and armed robbery charges to an aggregate sentence of twenty-eight (28) years to life imprisonment. (*See id.* at 4;

---

[1](...continued)
custodian. *See* 28 U.S.C. § 2242. At the time of filing, Petitioner was incarcerated at USP Allenwood, and thus Warden Miner was the proper Respondent.

[2]Respondents filed a Supplemental Response (Doc. 11) to address Wilson's *Ex Post Facto* claim, which they inadvertently failed to address in their Response (Doc. 7).

Doc. 7-2 at 3, Sentence Monitoring Computation Data.) The Amended Petition adds that Wilson subsequently was sentenced to concurrent sentences on the remaining thirty-four (34) counts of kidnapping, robbery, and burglary and/or rape. (*See* Doc. 19 at 3.)

While serving his District of Columbia sentence at the Lorton Reformatory in Virginia, which was then the District's long-term correctional facility, Wilson was charged with possession with intent to distribute Pentazocin and possession of a knife. (*See id.* at 5.) Following a jury trial in the United States District Court for the Eastern District of Virginia, Wilson was found guilty of the drug offense and not guilty of the weapons charge. (*See id.*) On October 16, 1987, Wilson was sentenced to a term of imprisonment of three (3) years to run consecutive to his District of Columbia sentences. (*See id.*; Doc. 13-7, Judgment and Probation/Commitment Order.)

In January 2001, Wilson successfully challenged the decision by the Bureau of Prisons ("BOP") to have his 1987 federal sentence lodged as a detainer to be served only after he had completed his District of Columbia sentences. (*See* Doc. 19 at 5.) By letter dated January 23, 2001, Wilson was notified that the BOP had reversed its decision, and that "The three year sentence is aggregated with your D.C. Code [sentences] as originally computed and your eligibility date is October 29, 2000." (Doc. 1 at 19, 1/23/01 Letter.) Accordingly, Wilson became eligible for parole.

## II. STATUTORY BACKGROUND

Pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), jurisdiction over parole decisions for District of Columbia offenders like Wilson was transferred from the District of Columbia Parole Board to the Parole Commission. *See* Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code § 24-131 (2001). The Revitalization Act requires the Parole Commission to follow D.C. parole law and regulations, but also gave it "exclusive authority to amend or supplement any regulation interpreting or implementing" District of Columbia parole laws. *See* D.C. Code § 24-131 (formerly §24-1231). However, the Commission must follow the applicable District of Columbia statute, D.C. Code § 24-404(a), which requires it to assess whether a District of Columbia offender is suitable for parole release by considering, *inter alia*, whether he is capable of living in the community without committing new crimes and without jeopardizing the public welfare.

The Parole Commission exercised its authority by expanding the "total point score" calculation that is contained in the 1987 District of Columbia Board of Parole guidelines. *See* 28 C.F.R. § 2.80. Under the 1987 guidelines, each prisoner was assigned a score, which was used as a guide to determine whether an inmate should be paroled or held in prison for a rehearing. This score was calculated by

adding or subtracting points for pre- and post- incarceration factors, including whether the prisoner's current conviction "involved violence against a person." *Ellis v. District of Columbia*, 84 F.3d 1413, 1416 (D.C. Cir. 1996). The Board, however, had discretion to grant or deny parole notwithstanding the result recommended by the scoring system.

The 1987 guidelines were in effect until August 5, 1998. At the time of Wilson's initial parole hearing on May 9, 2001, and his subsequent reconsideration hearings, an expanded version of the "total point score" calculation had been adopted by the Commission in the Guidelines for District of Columbia Offenders. *See* 28 C.F.R. § 2.80. The Commission is required to apply these Guidelines at an initial hearing and at subsequent rehearings. *See* 28 C.F.R. § 2.80(a)(1), (b). The Commission also is required to assess whether a District of Columbia offender is suitable for parole release by considering, *inter alia*, whether he is capable of living in the community without committing new crimes and without jeopardizing the public welfare. D.C. Code § 24-404(a).

At the time of the July 7, 2004 and April 21, 2005 parole decisions that Wilson challenges here, the version of the guidelines in effect at 28 C.F.R. § 2.80 (2003) allowed the Commission, under unusual circumstances, to grant or deny parole notwithstanding the guidelines. *See* 28 C.F.R. § 2.80(n)(2003). Unusual

5

circumstances are defined as "case-specific factors that are not fully taken into account in the guidelines, and that are relevant to the grant or denial of parole." 28 C.F.R. § 2.80(n)(1).

## III.   WILSON'S PAROLE PROCEEDINGS[3]

During his initial parole hearing before the Parole Commission on May 9, 2001, in determining Institutional Factors, the Hearing Examiner made a finding based in part on the weapons charge for which Wilson had been found not guilty in his 1987 jury trial in the Eastern District of Virginia. (Doc. 7-2 at 22-24, 5/9/01 D.C. Adult Initial Hearing Summary.) Based on that finding, a period of twelve (12) to sixteen (16) months was added to Wilson's base guideline range. (*See id.*) Wilson's Total Guideline Range was determined to be 324-350 months. (*See id.*) The Hearing Examiner stated as follows in the Evaluation section of his summary:

> . . . This examiner believes that the subject has tried to turn his life around and that he was only 19 years of age at the time of the instant offense. However, this examiner does believe that the subject poses a more serious risk in that the instant offenses of themselves are violent in nature. This examiner does not believe that the subject should be given a Rehearing date above the guidelines because he has not reached his minimum guideline range as of the hearing date. . .

(*See id.*)

Following the hearing, a Notice of Action dated July 23, 2001 issued denying

---

[3]Although Wilson only challenges the Commission's July 7, 2004 and April 21, 2005 decisions denying parole, in order to provide adequate background for our discussion of the issues presented in his Amended Petition, a summary of all of Wilson's parole proceedings is provided.

6

parole and continuing for a Three Year Reconsideration Hearing in May 2004 after the service of thirty-six (36) months from his hearing date. (*See id.* at 25, 7/23/01 Notice of Action.) The Notice indicated that Wilson had been confined for a total of 307 months as of May 27, 2001. (*Id.*) It also stated that, "After consideration of all factors and information presented, a decision outside the Total Guideline Range at this consideration is not found warranted." (*Id.*)

In a prior habeas action before this Court, Wilson claimed that the Hearing Examiner's actual on the record reasoning process regarding the determination that Wilson was in possession of a knife was based on an inaccurate factual predicate. *See Wilson v. Reilly*, Civil No. 4:03-CV-00770, Doc. 1. Because the facts relied upon by the Hearing Examiner had not been established, by Order dated January 19, 2005, this Court scheduled an evidentiary hearing in order to make a due process assessment as to the sufficiency of the reasoning process undertaken by the Hearing Examiner. *See id.*, Doc. 39. On January 27, 2005, Respondents in that action filed a Notice with the Court stating that, by Notice of Action dated January 26, 2005, the Parole Commission re-opened Wilson's case for a special reconsideration hearing at which it would not include the previously assessed twelve (12) to sixteen (16) months for possession of a knife that previously had been included in calculating his guideline range. *See id.*, Doc. 41. Because Respondents agreed to afford Wilson the relief he

7

sought in his petition, by Order dated January 28, 2005, the petition was dismissed as moot. *See id.*, Doc. 42.

On June 22, 2004, while his prior habeas petition was pending, Petitioner's Three-Year Reconsideration Hearing was held. (*See* Doc. 7-2 at 29-31, 6/22/04 Hearing Summary.) Because the Parole Commission had not yet issued its decision that it would not consider the knife charge in calculating Wilson's base guideline range, the knife charge again was considered, and Wilson's Total Guideline Range again was calculated to be 324-350 months. (*See id.*)

In a Notice of Action dated July 7, 2004, the Parole Commission denied parole and continued to a Three-Year Reconsideration Hearing in June 2007. (*See id.* at 32, 7/7/04 Notice of Action.) The Notice indicated that, as of June 22, 2004, Wilson had been confined for a total of 343 months. (*See id.*)

Pursuant to its decision to calculate Wilson's Total Guideline Range without assessing the twelve (12) to sixteen (16) months for possession of a knife, on January 26, 2005, the Parole Commission issued a Notice of Action pursuant to 28 C.F.R. § 2.75(e)[4] scheduling a special reconsideration hearing. (*See id.* at 34, 1/26/05 Notice of Action.) The Notice indicated that, if no other changes are made to the guidelines,

---

[4] 28 C.F.R. 2.75(e), which applies to District of Columbia Code Prisoners and Parolees, provides that, "[n]otwithstanding a previously established reconsideration hearing, the Commission may reopen any case for a special reconsideration hearing, as provided in § 2.28, upon the receipt of new and significant information concerning the prisoner."

Wilson's range would be 312-334 months. (*See id.*)

On March 28, 2005, the Commission conducted Wilson's Special Reconsideration Hearing. (*See id.* at 35-38, 3/28/05 Hearing Summary.) The Hearing Summary noted Wilson's confirmation of the fact that he had been confined for 353 months. (*See id.* at 36.) The Hearing Examiner stated that, although the Notice of Action showed that the guideline range would be 312-334 months, the Examiner calculated the guideline range at 312-324 months. (*See id.*) Even so, the Examiner stated that, "In considering all the information, this Examiner concurs that the subject is a more serious risk than indicated by his SFS. These risk factors were defined in the NOA dated 7/7/2004." (*See id.* at 37.) The Examiner made a recommendation to deny parole, but to continue to a presumptive parole after the service of 372 months on October 26, 2006 with Special Conditions of Mental Health and Drug Aftercare. (*See id.*) However, on April 15, 2005, the Executive Reviewer added the following comment to the Hearing Summary: "I disagree with setting a release date at this hearing for the reasons outlined in the NOA dated 7/4/04[5], which are still applicable at this hearing. A reconsideration hearing in 36 months is recommended." (*See id.* at 38.)

---

[5]It appears that the Executive Reviewer was referring to the Notice of Action dated July 7, 2004, as the record reflects that there is no Notice of Action dated July 4, 2004. (*See* Doc. 7-2 at 32.)

On April 21, 2005, a Notice of Action issued denying parole. Pursuant to 28 C.F.R. 2.75, following an initial or subsequent hearing for a District of Columbia offender, the Commission may, *inter alia*, set a presumptive parole date up to three (3) years from the date of the hearing, or schedule a reconsideration hearing three years from the month of the hearing. Although the Commission recognized Wilson's eligibility for consideration under its presumptive release date policy in the Notice of Action, it exercised its discretion to continue his case to a Three-Year Reconsideration Hearing in March 2008. (*See id.* at 39, 4/21/05 Notice of Action.)

After the instant Petition became ripe, on June 3, 2008, the Parole Commission issued a Notice of Action denying parole and continuing to a Three-Year Reconsideration Hearing in April 2011. (Doc. 21-2 at 1.) By Order dated August 4, 2008, Wilson's Unopposed Motion for Leave to file the a copy of the Notice as a supplemental exhibit was granted. (*See* Doc. 22.)

**IV.  STANDARD OF REVIEW**

Title 28, United States Code, Section 2241 vests the federal district courts with jurisdiction to grant a writ of habeas corpus to persons in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3).

It is well-settled that "there is no constitutional or inherent right of a convicted

person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). The Parole Commission is vested with discretion to determine a District of Columbia prisoner's eligibility for parole. *See United States v. Addonizio*, 442 U.S. 178 (1979); *Muhammad v. Mendez*, 200 F. Supp. 2d 466 (M.D. Pa. 2002); *McRae v. Hyman*, 667 A.2d 1356 (D.C. 1995) (holding that the District's parole scheme confers discretion to grant or deny parole, and the scoring system creates no liberty interest overriding the exercise of that discretion). However, "[a] legislative grant of discretion does not amount to a license for arbitrary behavior." *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980) (citations omitted). "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (internal quotation omitted).

The function of judicial review on a petition for writ of habeas corpus in the parole context is to determine whether the Parole Commission abused its discretion. *Furnari v. Warden*, 218 F.3d 250, 254 (3d Cir. 2000). Review is limited to whether there is a rational basis in the record for the conclusions embodied in the Parole Commission's statement of reasons, which should include whether the criteria, appropriate, rational, and consistent with its enabling statutes, has been followed so

11

that its decision is not arbitrary and capricious, nor based on impermissible considerations. *Id.* (citing *Zannino v. Arnold*, 531 F.2d 687, 690-91 (3d Cir. 1976)). The Court is not empowered to substitute its judgment for that of the Parole Commission unless the Commissions' exercise of discretion represents an egregious departure from rational decision-making. *See Butler v. U.S. Parole Commission*, 570 F. Supp. 67, 77 (M.D. Pa. 1983).

## V. DISCUSSION

In his Amended Petition, Wilson explains that, while his *pro se* Petition challenges the Parole Commission's April 21, 2005 decision to deny him parole, because that decision was predicated upon the Commission's prior denial of parole on July 7, 2004, he is challenging both decisions. (*See* Doc. 19 at 1 n.1.) Wilson argues that the Parole Commission's failure to set a presumptive release date constitutes a violation of the *Ex Post Facto* Clause and that the denials of parole were sufficiently capricious, arbitrary, and vindictive to deny him due process of law. (*Id.* at 9-17.) The Court will address each of these arguments in turn.

### A. *Ex Post Facto* Claim

The *Ex Post Facto* Clause of the United States Constitution forbids Congress from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then

12

prescribed." *See* U.S. Const. Art. I, § 9 ("No . . . *ex post facto* Law shall be passed."); *Weaver v. Graham*, 450 U.S. 24, 28 (1981). "One function of the *Ex Post Facto* Clause is to bar enactments, which by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000) (citations omitted). "[P]arole guidelines [can] constitute laws within the meaning of the *ex post facto* clause." *Crowell v. United States Parole Com'n*, 724 F.2d 1406, 1408 (3d Cir. 1984). A retroactive application of a change in parole laws, if applied rigidly or mechanically, can constitute an *ex post facto* violation. *See Bonilla v. Vaughn*, 1998 WL 480833, at \*7 (E.D. Pa. 1998). However, to be successful, a petitioner first must show that there has been a change in law or policy that was given retrospective effect. *Shaffer v. Meyers*, 163 Fed. Appx. 111, 113 (3d Cir. 2006). The petitioner then must show that the retrospective application of that law or policy to him created a real risk of increasing the measure of the his punishment. *Id.* (citing *Richardson v. Pennsylvania Bd. of Probation and Parole,* 423 F.3d 282, 288 (3d Cir. 2005); *see also Tyler v. Gillis*, 2006 WL 2038398, at \*1 (M.D. Pa. July 19, 2006);.

The Sentencing Reform Act of 1984 ("SRA"), codified at 18 U.S.C. § 3551 *et seq.*, "created new sentencing procedures in the federal system, replacing 'indeterminate sentences and the possibility of parole with determinate sentencing and no parole.'" *Hackley v. Bledsoe*, 2009 WL 585505, at \*2 (M.D. Pa. Mar. 6, 2009)

(citing *Walden v. U.S. Parole Comm'n*, 114 F.3d 1136, 1138 (11th Cir. 1997)).

Although the SRA abolished the United States Parole Commission, § 235(b)(1)(a)[6] kept the Commission in existence for five (5) years after the effective date of the SRA in order to process the cases of individuals convicted of crimes under the United States Code committed *before* the effective date of the SRA who still would be incarcerated on or after that date. *Id.* As originally enacted in 1984, § 235(b)(3) provided as follows:

> The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, that is ***within*** the range that applies to the prisoner under the applicable parole guideline. A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act.

Pub. L. 98-473, § 235(b)(3), 98 Stat. 2032 (emphasis added). On December 7, 1987, § 235(b)(3) was amended such that the Commission was instructed to set a release date "pursuant to section 4206 of title 18, United States Code," instead of a release date "that is within the range that applies to the prisoner under the applicable parole guideline." Pub. L. 100-182, 2(b), 101 Stat. 1266. Consequently, pursuant to the 1987 amendment, the Commission was permitted to set a release date *beyond* the

---

[6]Section 235 of the SRA is codified at 18 U.S.C. § 3551 note.

14

guideline range.

In *Lyons v. Mendez*, 303 F.3d 285 (3d Cir. 2002), the Third Circuit Court of Appeals held that the application of the 1987 amendment to § 235(b)(3) to individuals who committed crimes in violation of the United States Code between the time of the enactment of the SRA in 1984 and its amendment in 1987 violates the *Ex Post Facto* Clause. 303 F.3d at 293. The *Lyons* Court determined that the *ex post facto* violation stemmed from the enhancement of punishment that occurred where the Commission relied on the 1987 amendment to set a release date beyond, rather than within, the guideline range. *Id.* As a result, the Court held that individuals who committed their crimes between October 12, 1984 and December 1, 1987, who were sentenced under the SRA, and who therefore are treated as United States Code offenders by the Commission in parole consideration proceedings, must receive release dates within their parole guideline ranges pursuant to the original language of § 235(b)(3). *Id.*

Wilson argues that he is among the class of individuals defined in *Lyons* who are entitled to receive a release date within their parole guideline ranges, and that, as a result, the Commission's decisions on July 7, 2004 and April 21, 2005 departing from the guidelines to deny parole violate the *Ex Post Facto* Clause.

It is accurate that Wilson was convicted of a violation of 21 U.S.C. § 841(a)(1) on October 16, 1987, which was between the time of the enactment of the

15

SRA and the effective date of its amendment on December 1, 1987. However, the Commission did not rely on the 1987 amendment to the SRA in rendering its decisions outside the guidelines to deny parole. The Hearing Summaries and Notices of Action submitted on this record reflect that, following the aggregation of his sentences and determination that he was eligible for parole as of October 29, 2000, Wilson was classified as "DC Parole Eligible." (*See* Doc. 7-2 at 22, 25, 29, 32, 34, 35, 39; Doc. 21-2 at 1.) Wilson's District of Columbia sentences were imposed under the District of Columbia statute, not under the SRA. Therefore, in considering his suitability for parole, the Commission properly applied the regulations that apply to District of Columbia Code Prisoners and Parolees set forth at 28 C.F.R. § 2.70 *et seq.*, rather than the regulations that apply to United States Code Prisoners and Parolees set forth at 28 C.F.R. § 2.1 *et seq.* Consequently, there is no merit to Wilson's *ex post facto* claim because the Commission did not rely on the 1987 amendment to the SRA to deny parole. Rather, it properly exercised its authority under 28 C.F.R. § 2.80(n) to issue a decision outside the guideline range.

### B. Due Process Claim

Wilson also argues that the Commission violated his right to due process of law by enhancing his punishment through its denial of parole in its July 7, 2004 and April 21, 2005 decisions without explanation. He claims that the Commission acted

16

vindictively in denying him parole on these two occasions because he had successfully challenged the Commission's 2001 decision in which it enhanced his guideline range based on his knife possession charge.

Preliminarily, the Court notes that the July 7, 2004 Notice of Action in which the Commission first denied parole based on an upward departure from the guidelines was issued *before* the January 26, 2005 Notice of Action scheduling a special reconsideration hearing at which the knife possession charge would not be considered in calculating Wilson's guideline range. The Commission's determination in its May 9, 2001 Notice of Action that Wilson poses a "more serious risk" also predated his success in obtaining a reconsideration hearing. (*See* Doc. 7-2 at 22-24.) Further, because Wilson claims that the April 21, 2005 decision was predicated upon the July 7, 2004 decision (*see* Doc. 19 at 1 n. 1), his argument would appear to fail as to that decision as well. Therefore, Wilson cannot link the Commission's motive in denying parole on July 7, 2004 to his subsequent success in obtaining a reconsideration hearing.

Moreover, Wilson's argument that the Commission's denials of parole violated his right to due process of law lacks merit. The Commission provided a rational basis for its decisions to deny parole in its July 7, 2004 and April 21, 2005 Notices of Action. As is permitted by the guidelines applicable to District of Columbia

17

offenders, the Commission departed from the guideline range to deny parole. *See* 28 C.F.R. § 2.80(n). As required by that section, the Commission specified its reasons for its departure as follows:

> After consideration of all factors and information presented, a decision above the Current Total Guideline Range is warranted because you are a more serious risk than indicated by your Base Point Score in that you pled guilty to being involved in multiple offenses during October 1975. You were involved in at least three separate instances of kidnapping. During each of the kidnappings, you were involved in raping the female victims multiple times and in burglarizing the victims' homes. One of the female victims was 16 years old. In addition, you and the codefendants forced your way into at least 3 separate apartments and raped two female victims. In the third case, after you burglarized the male victim's apartment, you were involved in sodomizing the male victim by taking off the victim's pants, placing him on his stomach, mounting the victim from the rear and started gyrating up and down. A light bulb was the [*sic*] inserted into the victim's rectum. You were also involved in two murders. You and the codefendants went to the victim's home looking for drugs. When the victim denied having drugs, the victim was stabbed 61 times. The victim's 16-year old girlfriend came to the apartment and was also stabbed 43 times. The female victim was murdered to keep her from identifying her assailants. You then set fire to the apartment to [*sic*] in an attempt to destroy fingerprints and other evidence of the murders. Although you pled guilty to these offenses, at each parole hearing, you have denied your participation in all but one of these offenses. In establishing the level of accountability for your actions, the Commission would require service of substantially more time than that provided by the minimal term on the sentences to which you entered a guilty plea.

(*See* Doc. 7-2 at 32, 39, 7/7/04 and 4/21/05 Notices of Action.) As already discussed, the Commission classified Wilson as "DC Parole Eligible" and has consistently applied the District of Columbia guidelines in determining his suitability for parole.

Under those guidelines, the Commission is required to consider, *inter alia*, whether Wilson is capable of living in the community without committing new crimes and without jeopardizing the public welfare. D.C. Code § 24-404(a). A necessary part of making that determination is considering the nature and circumstances of Wilson's offenses. As already noted, the regulations that apply to District of Columbia offenders allow for departures outside the guidelines in "unusual circumstances." 28 C.F.R. § 2.80(n)(1). The Commission identified sufficient unusual circumstances in its July 7, 2004 and April 21, 2005 Notices of Action summarizing the incidents in which Wilson was involved. Specifically, in highlighting the rapes of female victims, including one who was sixteen (16) years old, sodomizing of a male victim, and multiple stab wounds inflicted on the two murder victims, it appears that the Commission properly considered "unusual cruelty to the victim", "predation upon extremely vulnerable victim," and "unusual propensity to inflict unprovoked and potentially homicidal violence" in determining that Wilson is a more serious parole risk than indicated by his Base Point Score. *See* 28 C.F.R. § 2.80(n)(2)(ii)(C) and (D). Because it appears from the explanation provided by the Commission that it had a rational basis for its decisions to deny parole, this Court does not find that the

Commission abused its discretion.[7]  *See Furnari*, 218 F.3d at 254.

## VI. CONCLUSION

For the foregoing reasons, the Amended Petition for Writ of Habeas Corpus (Doc. 19) will be denied.  Because Petitioner is in custody by virtue of a District of Columbia judgment, he is regarded as a state prisoner for habeas corpus purposes, and thus must obtain a certificate of appealability to pursue an appeal.  *Madley v. U.S. Parole Commission*, 278 F.3d 1306, 1309-10 (D.C. Cir. 2002); *Keitt v. U.S. Parole Commission*, 238 Fed. App'x. 755, 758 (3d Cir. 2007).  Because Petitioner has not made a substantial showing of the violation of a constitutional right in connection with the adverse parole decisions, 28 U.S.C. § 2253(c)(2), a certificate of appealability will not be issued.

---

[7]In its June 3, 2008 denial of parole, the Commission provided the same explanation for its decision to deny parole and continue to a Three-Year Reconsideration Hearing in April 2011.  (*See* Doc. 21-2 at 1.)  This decision was issued after the instant Petition became ripe and thus was not addressed by the Amended Petition and Supplemental Response.  However, in light of the fact that this Court granted leave to submit the decision as a supplemental exhibit, we will note that this explanation would continue to indicate that the Commission had a rational basis for its decision to deny parole.